398

No. 17,661.

CONWAY-BOGUE REALTY INVESTMENT COMPANY, ET AL. *v.* DENVER BAR ASSOCIATION, ET AL.

No. 17,662.

VAN SCHAACK & COMPANY, ET AL. *v.* DENVER BAR ASSOCIATION, ET AL.

No. 17,663.

JOHN F. BRUNO, ET AL. *v.* DENVER BAR ASSOCIATION, ET AL.
(312 P. [2d] 998)

Decided June 10, 1957.   Rehearing denied August 5, 1957.

Mr. KENNETH W. ROBINSON, Mr. ROBERT D. CHARLTON, Messrs. FAIRFIELD & WOODS, Mr. CHARLES J. BEISE, Mr. CHARLES D. BROMLEY, for plaintiffs in error.

Messrs. GORSUCH, KIRGIS, CAMPBELL, WALKER & GROVER, Mr. JOHN L. FERGUSON, for intervenors.

Mr. PERCY S. MORRIS, for defendants in error.

Mr. WM. RANN NEWCOMB, Mr. LAWRENCE A. LONG, Mr. PHILIP A. ROUSE, pro se.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE Denver Bar Association, the Colorado Bar Association, Philip A. Rouse and Lawrence A. Long, chairmen respectively of the two associations' committees on unauthorized practice, and Wm. Rann Newcomb and Lawrence A. Long, individually and as licensed attorneys in the State of Colorado, acting in their own behalf and in behalf of all licensed attorneys in the State of Colorado *and also on behalf of the public* (herein referred to as plaintiffs) in three separate actions sought to enjoin Van Schaack & Company, a corporation, Conway-Bogue Realty Investment Company, a partnership, and John F. Bruno, an individual (herein referred to as defendants) from preparing certain legal documents, giving advice to the parties to such documents as to the legal effect thereof and performing other acts, all of which plaintiffs allege constitute the unlawful practice

of law. Pursuant to stipulation The Denver Board of Realtors and the Colorado Association of Real Estate Boards (herein referred to as intervenors) were permitted to intervene as defendants.

The issues made by the pleadings in each case are in substance the same. The evidence presented shows in general that the same alleged objectionable acts were performed by each of the defendants.

The complaints allege that each of the defendants is a licensed real estate broker engaged in the business of real estate broker in the city of Denver and is now, and for many years last past has been, engaged in the unlawful practice of law in the state of Colorado by preparing for others and as a practice (a) instruments relating to and affecting real estate and the title thereto, including receipts and options for purchase, contracts of sale and agreements, deeds, promissory notes, deeds of trust, real estate mortgages, releases of deeds of trust and mortgages, and giving advice to the parties to such instruments as to the legal effect thereof. (b) Leases of real estate, notices terminating tenancy of real estate, demands to pay rent or vacate and other instruments creating, continuing, modifying or terminating the relation of landlord and tenant with respect to real estate and by giving advice to the parties to such instruments as to the legal effect thereof.

Plaintiffs further allege that the defendants make no charge for said services other than broker's commissions; that the defendants are generally not parties to any of said instruments. That the individual plaintiffs, as licensed attorneys, and all other licensed attorneys in the state of Colorado hold and enjoy "privileges and franchises creating property rights in them and that the same have been and are now being encroached upon and damaged by the unlawful practice of law by the defendant in the manner and circumstances hereinbefore set out and that, if such unlawful practice of law by the defendant is not restrained by order of court, the said

plaintiffs Wm. Rann Newcomb and Lawrence A. Long, as well as all other attorneys duly licensed to practice law in the State of Colorado and the public generally, will be greatly and irreparably damaged thereby.

"13. That the interests of the public and particularly of those persons owning, buying and selling real estate and those persons making and securing loans on real estate require that the persons who, pursuant to employment, prepare, in the State of Colorado, for others than themselves legal instruments by which real estate and interests therein are conveyed, acquired, encumbered, released and otherwise affected shall be limited to those persons who have been found by the Supreme Court of the State of Colorado to be qualified by their education and moral and ethical qualifications to practice law in said State."

Defendants in their answers admit doing, as a practice, most of the acts charged by plaintiffs, but allege that they do none of the acts of which complaint is made except in the conduct of their businesses as real estate brokers, and that they prepare instruments only as requested by parties to real estate transactions which they are handling as brokers, and in which they have an interest as brokers; that they only prepare deeds, mortgages, etc., on attorney-approved printed forms, accepted publicly by long custom and usage by the public and by the plaintiffs and used for many years generally throughout the state of Colorado. Defendants deny that their actions constitute the unlawful practice of law and allege that said acts are reasonable and necessary incidents to the proper conduct of their licensed businesses. As a further defense defendants allege that public convenience and necessity requires that defendants be permitted to fill in blanks on approved printed forms in connection with real estate transactions handled by them as brokers.

Intervenors in their answer allege that both are corporations; that there are seventeen real estate boards in

the state of Colorado, all members are licensed real estate brokers or licensed salesmen; that the seventeen boards constitute The Colorado Association of Real Estate Boards. Intervenors' answer follows the same tenor as defendants' answers and adds little thereto.

By stipulation the three cases were consolidated for joint hearing before one judge but without merging the actions. Trial was to the Court. The testimony consisting of some 1500 folios, virtually all of it elicited from the defendants, their officers, agents or employees and the intervenors and their officers, is very detailed and does not deal with any specific situation but rather with the uniform practices of the defendants and other real estate brokers in the state of Colorado. The evidence is not in dispute. It shows conclusively (1) that the defendants as licensed real estate brokers bring together parties to prospective real estate transactions and in connection therewith at the request of one or both parties take the necessary steps to have ready for delivery on commonly used and approved printed forms, completed and executed receipts and options, deeds, promissory notes, deeds of trust and releases thereof, real estate mortgages and releases thereof, leases of real estate, notices terminating tenancy of real estate, demands to pay rent or vacate, and extensions and modifications of leases. That information necessary for the selection of the proper form and filling in, preparing or drafting the same is obtained from the parties, the salesman, employees of the defendants, abstracts, title insurance policies, attorneys' abstract title opinions issued for and directed to the purchaser, a title insurance company or a lending agency. (2) That the defendants on inquiry made by the parties explain the difference between joint tenancy and tenancy in common and explain the distinction between purchase and sale of real estate subject to encumbrances with assumption thereof and without assuming and agreeing to pay the indebtedness. (3) That the defendants do and perform

the above acts and services as a practice in carrying on their licensed real estate business and only in connection with deals they are handling; that no charge for such service is made other than the regular and established commissions; that such acts and services are never done or furnished except in connection with a bona fide real estate transaction which they are handling; that they intend to continue such practices unless restrained from so doing. (4) That in virtually all purchases of real estate the purchaser procures title insurance or has the title examined by an attorney of his own choosing. If there is a loan, an attorney, chosen by the lender, examines the title in which event the purchaser is furnished a copy of the attorney's opinion; that the defendants encourage the parties to employ attorneys to prepare the required documents and attend the closings, attorneys at times do prepare the documents and attend the closings but more often tell the defendants to prepare the documents and submit them to the attorney for inspection. In many cases the attorneys do not attend the closing or inspect the documents and in many cases the parties do not have an attorney except to examine the title. (5) That defendants and intervenors offered testimony, admitted over objections of the plaintiffs, to show that in three counties in Colorado there are no lawyers, in each of ten other counties there is only one lawyer, and in each of seven other counties there are only two lawyers; that printed forms of the type described above are available at the offices of county clerks and at book and stationery stores; that for many years these forms have been generally used by lawyers and laymen alike in real estate transactions; that often the forms are filled in at places far removed from any attorney, more often than not on Sundays, holidays, nights or even early morning hours when attorneys are not readily available. (6) That defendants offered evidence of the nature of the examinations testing the knowledge of applicants for real estate brokers or sales-

men's licenses with reference to use and preparation of so-called real estate forms; the nature and extent of courses of study offered by Denver University and Colorado University dealing with the use of so-called standard forms; evidence showing the number of standard printed real estate forms recorded in Denver during the period July 16, 1953, to October 15, 1953; evidence showing the number of standard printed forms as compared to non-printed forms used in 19 counties during the period June 1, 1953, to September 1, 1953; evidence that for several years in Pueblo county the Bar Association of Pueblo county and the realtors had an agreement as to the use and filling in of standard forms in transactions handled by realtors; evidence of the 48-year practice of realtors in using standard forms in Weld county and examples of the practice showing the impracticability of having to have a lawyer present at the beginning, during and ending of the ordinary real estate sale, mortgage or leasing. All of this evidence was rejected. (7) That there is no lack of lawyers in the Denver area where the defendants conduct their business.

The trial court found that the defendants were not practicing law when they —

(a) "prepared an initial contract of sale (whether or not denominated receipt and option) * * * by the filling in of printed forms in transactions where defendant, as a licensed real estate broker, had been employed to find a purchaser or a seller * * *."

(b) "That the preparation * * * of notes and deeds of trust and mortgages * * * which evidence loans made by the defendant of its own money * * * shall not be restrained or enjoined * * * but shall be * * * restrained and enjoined * * * if, at the time of the execution of such instruments, the defendant knows definitely that the loan evidenced by such instruments will be purchased from it by a certain and specific purchaser."

Save for the two exceptions noted above the trial

court perpetually enjoined each of the defendants from doing any of the acts enumerated herein and labelled as objectionable by the plaintiffs.

Defendants bring the cases to this Court by separate writs of error consolidated for hearing on a single record and seek to have the judgments and decrees of the trial court vacated and set aside and the complaints dismissed; plaintiffs seek to have the judgments and decrees modified to also enjoin the defendants from preparing *initial contracts* and as so modified to be affirmed.

The questions involved are numerous, important and difficult of solution. Decision thereof will have far reaching effect on lawyers and laymen alike including some 7000 Colorado licensed real estate brokers and salesmen. All parties to this litigation and their respective attorneys appear to be mindful of the effect on the public welfare inherent in the resolution of the questions involved. We acknowledge with gratitude the help and aid afforded the Court by the fair, candid and exhaustive briefs and arguments submitted by counsel for the respective parties.

Before entering upon a determination of the questions presented by these actions, we feel it fitting and proper to make some general observations that may prove helpful as guides for future conduct of lawyers, laymen and the public in general.

Questions as to issuing and revoking of licenses to practice law and the terms and conditions thereof, determining what acts do or do not constitute the practice of law, punishments for unlicensed practices, methods to prevent the unlawful practices of law and all other matters pertaining thereto are judicial functions and fall within the powers and duties of the judicial branch of the government made up of our constitutionally created courts, the supreme court, district courts and county courts. Though the legislature in 1905 adopted what is now C.R.S. '53, 12-1-17:

"Practicing law without license deemed contempt.—

Any person who, without having a license from the supreme court of this state so to do, shall advertise, represent or hold himself out in any manner as an attorney, attorney at law, or counselor at law, or who shall appear in any court of record in this state to conduct a suit, action, proceeding, or cause for another person, shall be deemed guilty of contempt of the supreme court of this state and of the court in which said person shall so appear and shall be punished therefor according to law. Nothing herein contained shall prevent the special admission of counselors, residing in other states, as provided in section 12-1-18." We do not consider this statute as a grant of power to this Court or a limitation upon its inherent powers. The judiciary has inherent and plenary powers, with or without legislative enactment, to regulate and control the practice of law to the extent that is reasonably necessary to the proper functioning of the judiciary.

The supreme court of Massachusetts in *In re Opinion of the Justices*, 289 Mass. 607, 194 N.E. 313, says:

"It is inherent in the judicial department of government under the Constitution to control the practice of the law, the admission to the bar of persons found qualified to act as attorneys at law and the removal from that position of those once admitted and found to be unfaithful to their trust. While the judicial department cannot be circumscribed or restricted in the performance of these duties, appropriate and essential assistance in discharging them may be afforded by the enactment of statutes. As the questions are framed and as a general proposition, valid permission to practice law cannot be given by the General Court [legislature] except subject to the requirements for admission to the bar established by the judicial department."

See, also, *Grand Rapids Bar Association v. Denkema*, 290 Mich. 56, 287 N. W. 377; *Cowern v. Nelson*, 207 Minn. 642, 290 N. W. 795.

■ All previous actions brought before this Court with reference to the unlawful practice of law have been brought as original proceedings in the Supreme Court by the attorney general in the name of The People of the State of Colorado seeking to have the offending person adjudged in contempt and punished therefor as provided in C.R.S. '53, 12-1-17, supra. The actions now before this Court seek to enjoin the defendants from committing further unauthorized acts and for "further relief as to the Court shall seem proper." The question as to whether an injunction may issue to restrain the unauthorized practice of law has never been determined by this Court and the question is not directly raised in these actions; however, there is some suggestion in the briefs that injunctive relief may not be granted. The question has been determined in many jurisdictions and the decisions are quite uniform that, with or without statutory authorization or sanction, in a proper case, a person engaged in the unlawful practice may be punished for contempt, and may also be enjoined from further similar unlawful action — we so hold.

· In *Land Title Abstract & Trust Co. v. Dworken,* 129 Ohio St. 23, 193 N.E. 650, the court said:

"It is quite generally held that the right to practice law conferred by the state is a special privilege in the nature of a franchise, and that the holder thereof may be protected from the invasion of the right thus vested in him. The adequate remedy for such invasion is by injunction, and that is so whether the transgressor is an individual or a corporation, though, as to the latter, as contended, quo warranto would lie.

"A recent case directly in point is that of *Unger et al v. Landlords' Management Corporation, supra,* [114 N.J. Eq. 68, 168 A. 229] where the court held that the right to practice law exists by virtue of a license from the state and may be protected from unlawful encroachment by injunction, though the act complained of is a violation of statute which prescribes a penalty."

See, also, *In re Gore,* 58 Ohio App. 79, 15 N. E. (2d) 968, U. P. D. 472.

█ There also arises the question as to who are proper parties plaintiff. As above pointed out all previous suits have been brought by the attorney general in the name of The People of the State of Colorado. Here we have the suits brought by The Denver and Colorado Bar Associations, the Chairmen of the Unauthorized Practices Committee of each association and two licensed attorneys who appear for themselves and all other licensed attorneys *and on behalf of the public.* All plaintiffs claim to be acting to protect the public against unlawful acts of the defendants rather than to protect the licensed attorneys from injuries suffered in having their business taken from them by the unlawful practice of law by laymen.

"* * * It is generally held that duly licensed members of the bar may invoke the jurisdiction of the courts to restrain the illegal practice of law by others. In other words, attorneys, as officers of the court, may both for themselves and all the affected members of their profession, institute and maintain a suit to challenge or enjoin the unlawful intrusion into their office and professional field by one who is not licensed to do so." 5 Am. Jur. 272 (sec. 18).

In *Fitchette et al v. Taylor et al.,* 191 Minn. 582, 254 N. W. 910, the court said:

"Attorneys, as officers of court, exercise a privilege peculiar to themselves and not enjoyed by those outside of the profession. Hence, it is in a very real sense a franchise and property right. *Dworken v. Apartment House Owners Association,* 38 Ohio App. 265, 176 N. E. 577; *Unger v. Landlords' Management Corp.,* 144 N. J. Eq. 68, 168 A. 299; *Paul v. Stanley,* 168 Wash. 371, 12 P. (2d) 401. That is enough to show that these plaintiffs, suing not for themselves alone but for the benefit of all the affected members of their profession, are entitled to injunction to prevent the unlawful intrusion into their

office and professional field of defendant Taylor. In such a case, the extent of the damage to the property right is unimportant. The existence or threat of real damage is enough to warrant relief."

■ It is a general rule that a court of equity will grant an injunction only where there is imminent danger of irreparable injury or damage to the plaintiff; however, in order to restrain an unlicensed person from practicing a profession it is not necessary to prove irreparable injury or the threat thereof, where the suit is in behalf of the public.

"The fact that no property or pecuniary interest of the plaintiff is involved is not an answer to a suit for an injunction to enjoin the practice of a profession without a license, where the action is in behalf of the public." 28 Am. Jur. 349 (sec. 157).

"Courts of equity are reluctant to use the process of injunction where the remedy by indictment or information is efficacious, but will not hesitate where the remedy is not adequate, and it is necessary to protect the rights of the public or an individual. A court is not powerless to prevent the doing of an act merely because it is denounced as a public offense." *State v. Lindsay,* 85 Kan. 79, 116 Pac. 207.

We now turn to the issues presented by the record herein.

■ We find no error in the ruling of the trial court in permitting the defendants to present evidence of the number of attorneys in various counties, the number of instruments recorded, the customary method of conducting real estate transactions, etc. Trial was to the court and the evidence was pertinent and helpful in knowing the problems of the various parties and the public.

Defendants complain of the court's ruling in excluding certain testimony and exhibits as outlined above. In view of the conclusions reached herein we do not find it

necessary or desirable to pass on the correctness of the court's ruling excluding this tendered evidence.

The first question to be determined is:

*Does the preparation of receipts and options, deeds, promissory notes, deeds of trust, mortgages, releases of encumbrances, leases, notice terminating tenancies, demands to pay rent or vacate by completing standard and approved printed forms, coupled with the giving of explanation or advice as to the legal effect thereof, constitute the practice of law?*

This question we answer in the affirmative.

Our legislature has never undertaken to define the practice of law. Though this Court has made findings in specific cases holding that certain acts did or did not constitute the practice of law, unfortunately the decisions cannot be reconciled with each other; do not reflect a definite guide or policy and afford slight assistance in resolving the issues before us.

June 29, 1936, in *People v. Denver Clearing House Banks*, 99 Colo. 50, 59 P. (2d) 468, it was held:

"We think the drawing of wills, as a practice, is the practice of law * * *."

October 4, 1937, in *People v. Jersin*, 101 Colo. 406, 74 P. (2d) 668, it was held that the drawing of a will and three deeds by a layman for which no charge was made (by strange coincidence the person for whom the documents were made did shortly thereafter make a gift of *$13.00* to Jersin and even more strangely Jersin issued his receipt for this $13.00 *gift*) was not punishable as the practice of law.

March 24, 1952, in *People v. Newer*, 125 Colo. 304, 242 P. (2d) 615, it was held that the drawing of a will for compensation constituted the practice of law and a fine of $100.00 was imposed.

May 18, 1953, in *People v. Hanna*, 127 Colo. 481, 258 P. (2d) 492, it was held that the drawing of one will and rendering one title opinion constituted the practice of law and a fine of $200.00 was imposed.

January 4, 1954, in *People v. Woodall,* 128 Colo. 563, 265 P. (2d) 232, we said that the drawing of one will without charge (and also without *even a gift)* constituted the practice of law and warranted holding the defendant in contempt. A fine of $200.00 was imposed, or in lieu thereof, 60 days in the county jail.

We feel that *People v. Newer, supra, People v. Hanna, supra,* and *People v. Woodall, supra,* are a complete repudiation of *People v. Jersin, supra;* and to the extent that decision is in conflict with our present holding it is expressly overruled.

█ The drafting of any one of the enumerated instruments and advising as to the legal effect thereof might present a very simple legal problem, on the other hand it might result in a most difficult and complex legal problem with far reaching consequences. In either event it constitutes the practice of law.

Among the many decisions on the question we refer to the following:

In *Paul v. Stanley,* 168 Wash. 371, 12 P. (2d) 401, the court enjoined the defendant from doing certain acts alleged to be the practice of law and in so doing said:

"The question presented by the cross-appeal is: Does the preparation for others, with or without reward, of deeds, mortgages, leases, agreements, contracts, bills of sale, chattel mortgages, notes, conditional sales contracts, options, powers of attorney, liens, bonds, mortgage assignments, releases, or satisfactions, creditors' claims in probate, notice to vacate premises or to pay rent, constitute unlawful practicing as an attorney or counselor at law, or the unlawful doing of work of a legal nature within the meaning of Rem. Comp. Stat. § 139-4? It will be observed that all of the foregoing instruments, which respondent claims he was wrongfully enjoined from preparing, are instruments which undertake either to define, set forth, limit, terminate, specify, claim, or grant legal rights. The evidence clearly established the fact that respondent not only prepared legal documents, but

also gave legal advice. A person who gives legal advice to those for whom he draws instruments, or holds himself out as competent to do so, does work of a legal nature, when the instruments he prepares either define, set forth, limit, terminate, specify, claim or grant legal rights."

In *Hulse v. Criger*, 363 Mo. 26, 247 S. W. (2d) 855, the court said:

"We also hold that respondent's acts in preparing legal instruments for persons in transactions in which he was not acting as a broker, making a charge therefor, amounted to the practice of law; and that his separate additional charges even in transactions in which he was acting as broker tend to place emphasis on conveyancing and legal drafting as a business rather than on his business of real estate broker. * * *"

The remaining and most difficult question to be determined is:

*Should the defendants as licensed real estate brokers (none of whom are licensed attorneys) be enjoined from preparing in the regular course of their business the instruments enumerated above, at the requests of their customers and only in connection with transactions involving sales of real estate, loans on real estate or the leasing of real estate which transactions are being handled by them?*

This question we answer in the negative.

The announced purpose of these suits are twofold:

(a) To protect the licenses, privileges and franchises granted to attorneys from encroachment and damage by reason of the alleged unauthorized acts of the defendants.

(b) To protect the public and particularly those persons participating in real estate transactions through brokers, from the dangers inherent in the preparation of legal documents by persons unskilled in the intricacies of the law rather than by lawyers.

The defendants are all engaged in a lawful business. It is considered of such importance that the state of

414

Colorado has adopted regulatory legislation providing for the licensing of persons engaged therein.

"No person shall be granted a license until he shall have passed a satisfactory examination and shall have established that he is trustworthy and bears a good reputation for good and fair dealing and is competent to transact the business of a real estate broker or real estate salesman in such manner as to safeguard the interest of the public * * *." C.R.S. '53, 117-1-1.

We distinguish between that part of the public in quest of legal advice and services and out of which arises only the relationship of attorney and client and those bent on buying, leasing or selling real estate or borrowing money thereon, and out of which arises the relationship of seller-broker, buyer-broker, lessee-broker, lessor-broker, lender-broker or borrower-broker.

The record shows conclusively that the defendants do not prepare papers or give advice to anyone except their customers who through solicitation or otherwise engage or employ them as brokers.

On the other hand, the record shows conclusively that the defendants do select, prepare and explain the documents enumerated above at the request of their customers, without charge other than the usual brokers' commission, and only in connection with real estate transactions then being handled by them and property left in their charge for management.

Defendants claim that they are entitled to render such service as necessary and incidental to their licensed businesses; that the selection, filling in and explaining the legal effects of standard simple forms by defendants, instead of being contrary to the public interest, is in fact a desirable and necessary service accepted and enjoyed by the public for many years. That it is an incidental service defendants must render in order to become entitled to earn and receive commissions as provided by C.R.S. '53, 117-2-1.

"No real estate agent or broker shall be entitled to a

commission for finding a purchaser who is ready, willing and able to complete the purchase of real estate as proposed by the owner, *until the same is consummated* or is defeated by the refusal or neglect of the owner to consummate the same as agreed upon." (Emphasis supplied.)

The testimony shows, and there is no effort to refute the same, that there are three counties in Colorado that have no lawyers, ten in each of which there is only one lawyer, seven in each of which there are only two lawyers; that many persons in various areas of the state reside at great distances from any lawyer's office. The testimony shows without contradiction that the practices sought to be enjoined are of at least 50 years uninterrupted duration; that a vast majority of the people of the state who buy, sell, encumber and lease real estate have chosen real estate brokers rather than lawyers to perform the acts herein complained of. Though not controlling, we must make note of the fact that the record is devoid of evidence of any instance in which the public or any member thereof, layman or lawyer has suffered injury by reason of the act of any of the defendants sought to be enjoined. Likewise, though not controlling, we take judicial notice of the fact that the legislature of the state, composed of 100 members from all walks of life and every section of the state, usually called upon by their constituents to adopt legislation designed to eliminate evils and protect the public against practices contrary to the public welfare, has never taken any steps to prevent continuation of the alleged evil which we are now asked to enjoin.

The question here to be resolved, and similar questions involving other businesses, has been before the courts of most of the 48 states, with widely divergent views and decisions resulting. There is very respectable authority for enjoining the acts complained of here; there is also respectable authority for denying injunctive relief. We feel that the weight of authority and espe-

cially the more recent decisions, sanctions our holding that the acts of which complaint is made, done without separate charge therefor by licensed real estate brokers only in connection with their established business, and in behalf of their customers and in connection with a bona fide real estate transaction which they are handling as brokers, should not be enjoined.

The plaintiffs have much logic in support of their contentions. Reason, public convenience and welfare appear to be on the side of the defendants.

We feel that to grant the injunctive relief requested, thereby denying to the public the right to conduct real estate transactions in the manner in which they have been transacted for over half a century, with apparent satisfaction, and requiring all such transactions to be conducted through lawyers, would not be in the public interest; that the advantages, if any, to be derived by such limitation are outweighed by the conveniences now enjoyed by the public in being permitted to choose whether their broker or their lawyer shall do the acts or render the service which plaintiffs seek to enjoin.

In *Cowern, et al. v. Nelson, supra,* the supreme court of Minnesota had before it the exact problems presented in the three cases now before this court.

The action was brought by the Minnesota State Bar Association and the Ramsey County Bar Association in behalf of the associations and all of their members, all attorneys at law, the public and the courts of the state of Minnesota, to obtain an injunction restraining the defendant, a licensed real estate broker from:

"* * * preparing, drawing or selecting for others purchase money contracts, contracts for deeds, leases, notes, mortgages, chattel mortgages, bills of sale, deeds, assignments, satisfactions, and any other instruments of conveyance or legal documents either for or without the payment of a fee and from advising others as to the instruments to be used or the legality and legal effect of such instruments, or as to their rights thereunder."

Various real estate boards and associations filed briefs amici curiae. The trial court granted the injunction. On appeal the supreme court remanded the case to the trial court with instructions:

"* * * to eliminate from the injunction any restraint on the defendant, when acting as a broker for the parties, or as agent for one of them, to a sale or trade or lease of property or to a loan, from drawing or assisting in drawing without charge therefor such papers as may be incident to such transactions."

The following language of the Minnesota court is applicable in the cases before us and we quote with approval:

"* * * The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do every day in their practice may also be done by others without wrongful invasion of the lawyers' field. We think that ordinary conveyancing, part of the every day business of the realtor, is within that region and consequently something of which the legal profession cannot under present circumstances claim that the public welfare requires restraint by judicial decree. It is the duty of this court so to regulate the practice of law and to restrain such practice by laymen in a common sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic. Viewing the problem before us in that light, we do not think it would be in the interest of the public welfare to restrain brokers from drafting the ordinary instruments necessary to effectuate the closing of the ordinary real estate transaction in which they are acting. We do not think the possible harm which might come to the public from the rare instances of defective conveyances in such transactions is sufficient to outweigh the

great public inconvenience which would follow if it were necessary to call in a lawyer to draft these simple instruments."

In *Rinderknecht v. Toledo Association of Credit Men,* 13 F. Supp. 555, the bar association sought to enjoin defendant, a credit association, from furnishing claim forms, presenting claims before a referee in bankruptcy and collecting dividends. The court said:

"* * * It is a matter of public concern, more so than in a case in which only the welfare of the immediate parties is involved, that the law should be economically, expeditiously, and carefully applied, and then only to those who are strictly within its purview. We think that any respectable agency which can assist in such an administration should be permitted to do so, even though activities, which may savor of practicing law in a minor way, so simple and obvious as to be within the capacity of any intelligent layman. * * *

"We are in full sympathy with the efforts of the bar to curb unauthorized practice of the law, but it seems highly inadvisable to draw the line too finely, especially when, as here, to be technical may add to the expense of the law's administration, tending to discourage at least small creditors from asserting their rights, or to enter into proper controversies. The profession is not so strongly intrenched in public confidence that it may safely insist on exclusive right to apply, in simple matters, knowledge of the law which is equally the equipment of businessmen."

In *Lowell Bar Assn. v. Loeb, et al.,* 315 Mass. 176, 52 N. E. (2d) 27, the bar association sought to enjoin the defendants, operators of a tax service, from conducting the business of preparing for others income tax returns. In denying the injunction the court used the following language:

"The proposition cannot be maintained, that whenever, for compensation, one person gives to another advice that involves some element of law, or performs

for another some service that requires some knowledge of law, or drafts for another some document that has legal effect, he is practising law. All these things are done in the usual course of the work of occupations that are universally recognized as distinct from the practice of law. There is authority for the proposition that the drafting of documents, when merely incidental to the work of a distinct occupation, is not the practice of law, although the documents have legal consequences. * * *

      *   *   *

"* * * There are instruments that no one but a well trained lawyer should ever undertake to draw. But there are others, common in the commercial world, and fraught with substantial legal consequences, that lawyers seldom are employed to draw, and that in the course of recognized occupations other than the practice of law are often drawn by laymen for other laymen, as has already been shown. The actual practices of the community have an important bearing on the scope of the practice of law. * * *"

In *Cain, et al. v. Merchants National Bank & Trust Co. of Fargo,* 66 N.D. 746, 268 N.W. 719, plaintiffs sought to enjoin defendant from preparing for others chattel mortgages, bills of sale, crop contracts, deeds, real estate mortgages, extensions, assignments of rents, etc. In denying an injunction the court said:

"* * * The defendant does not claim the right to practice law, and it is clear from the record that it has no such right. Since it has no right to practice law directly, it cannot do so indirectly by employing a licensed attorney to practice for it, as that would be a mere evasion of the law. * * *

      *   *   *

"* * * A careful study of the many decisions of the courts relative to what constitutes practicing law, when applied to the facts in this case, leads us to the conclusion that a person who is not a member of the bar may

draw instruments such as simple deeds, mortgages, promissory notes, and bills of sale when these instruments are incident to transactions in which such person is interested, provided no charge is made therefor.

"* * * The group of instruments represented by Exhibit 91 ["quitclaim deeds, warranty deeds, real estate mortgages, extensions thereof, satisfactions, assignments of rents, and an executor's deed"] appear to be simple instruments which were drawn as an incident to the defendant's loan business, or in connection with settlements with the bank, and cannot reasonably be said to constitute practicing law."

In *Hulse v. Criger, supra,* the court was confronted with the same problems as are presented in the cases now before us. The supreme court of Missouri reviewed the authorities and in a unanimous, well reasoned opinion held that the acts complained of did not constitute the unlawful practice of law. The court said:

"It is true that a real estate broker has earned his commission when he has found a purchaser ready, willing and able to take the property at the price and upon the terms fixed by the owner. However, we know as a practical matter that he does not get his money at that time; and often there are several written offers and counter offers which result in a contract before it can be said that a purchaser has been found. It is a matter of great importance to the broker to get an agreement in writing and then to close the transaction as promptly as possible, because as a matter of practice that is usually when he gets paid. Thus he is personally concerned in the transaction and actually he is acting partly in his own interest in getting a contract signed and the deal closed.

\* \* \*

"However, this is also a practical reason why the completion of the contract is a part of the business of the real estate broker in the transaction; and it is usually to the interest of the seller he represents, as well as his

own, to get a binding agreement completed promptly while the parties are together on its terms. Such agreements may be complicated and one or both of the parties may or should realize the need for a lawyer to prepare the contract rather than to use a standardized form; but more often they are simple enough so that such a form will suffice and the parties will wish to avoid further delay or expense by using them. So much real estate business is done in this way, without harmful results, that we do not think the public interest requires it to be changed."

In *Petitions of Ingham County Bar Association,* 342 Mich. 214, 69 N.W. (2d) 713, the bar association sought to have two licensed realtors held in contempt and enjoined for doing the things complained of here. In ruling in defendant's favor the court said:

"With the growth of this State and particularly in urban centers with their rapidly increasing populations making purchases of homes and land, a very conservative estimate would be that many thousands of documents of the type here under consideration are executed each year. Plaintiff claims that the functions of brokers are simply to find a willing seller and a willing buyer and that thereafter it becomes necessary for duly licensed attorneys to complete the transaction. The difficulty is that such contracts must be in writing and duly signed and neither the seller nor the buyer is bound until a contract of sale is signed. Practically speaking the broker is interested in the transaction up to and including the consummation of the sale. And, as pointed out by the defendants, a large volume of the business is transacted after working or business hours when attorneys are not available. It would cause extra expense and great inconvenience to the parties to have to wait until an attorney could be secured under such circumstances and possibly the willing party (buyer or seller) might not sign after a lapse of hours or days, or more, until the services of an attorney of the parties' choice

would be available. The claims of the plaintiffs are unrealistic and impractical.

"According to plaintiffs' claim it would be necessary to have an attorney present or at beck and call at all times when sales, which under the statute of frauds must be in writing, are made. This might result in unnecessary expense or possibly also making attorneys become realtors in order to legally close a contract for the sale of real estate. * * *"

See, also, *State ex rel. Wright v. Barlow,* 131 Neb. 294, 268 N.W. 95; *In re Bercu,* 78 N.Y.S. (2d) 209, affirmed 229 N.Y. 728, 87 N.E. (2d) 451; *Liberty Mutual Insurance Co. v. Jones,* 344 No. 932, 130 S.W. (2d) 945; *Childs v. Smeltzer,* 315 Pa. 9, 171 Atl. 883; *La Brum v. Commonwealth Title Co. of Philadelphia,* 368 Pa. 239, 56 A. (2d) 246.

The judgments and decrees in each of the three cases are reversed and remanded with directions that plaintiff's complaint in each of the three cases is dismissed.

It is further ordered that each party pay his or its own costs in the trial court and in this Court.