2012 COA 76

**John GLEASON, in his official capacity as Supreme Court Regulation Counsel, Petitioner–Appellant and Cross–Appellee,**

**and**

**Office of Attorney Regulation Counsel, Appellant and Cross–Appellee,**

v.

**JUDICIAL WATCH, INC., Respondent–Appellee and Cross–Appellant.**

No. 11CA0930.

Colorado Court of Appeals, Div. VI.

April 26, 2012.

John W. Suthers, Attorney General, Maurice Knaizer, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellant and Cross–Appellee and Appellant and Cross–Appellee.

Rouse Law Office, P.C., James P. Rouse, Denver, Colorado; Michael Bekesha, Washington, DC, for Respondent–Appellee and Cross–Appellant.

Opinion by Judge BERNARD.

¶ 1 This appeal involves the friction that is produced when two important interests conflict. On the one hand, the public has an important interest in the openness of its government, in part to find out what the government is doing. On the other hand, there are important reasons for maintaining the confidentiality of certain categories of information found in government records.

¶ 2 Here, the important interest in governmental openness is represented by respondent, Judicial Watch, Inc. It requested access to certain records under the Colorado Open Records Act (CORA), sections 24–72–201 to –206, C.R.S.2011. CORA generally addresses public access to governmental records.

¶ 3 The important reasons for maintaining the confidentiality of information are represented by petitioner, John Gleason, in his official capacity as Supreme Court Regulation Counsel, and the Office of Attorney

Regulation Counsel (collectively, regulation counsel). Regulation counsel possesses the records that Judicial Watch seeks. They pertain to the appointment of regulation counsel by the Chief Justice of the Colorado Supreme Court, at the request of the Chief Justice of the Arizona Supreme Court, to investigate the conduct of lawyers in Arizona. Regulation counsel denied Judicial Watch's request.

¶ 4 This dispute ended up in court. The trial court granted most of Judicial Watch's request and denied the rest. Both sides appeal. We affirm in part and reverse in part, and we remand to the trial court to enter an order denying Judicial Watch's entire request.

¶ 5 We base our decision on the recognition that the two important interests at issue here co-exist in a delicate balance. To resolve the friction between them and to maintain that balance, we reach several conclusions.

¶ 6 First, regulation counsel is part of the judicial branch.

¶ 7 Second, we follow the holding of our supreme court that the scope of the statutory vehicle—CORA—upon which Judicial Watch relies does not include the judiciary, and, thus, does not include regulation counsel.

¶ 8 Third, although the judiciary has promulgated court rules that may govern access to the types of records that Judicial Watch seeks, Judicial Watch has made clear its position that such rules do not govern its request. Therefore, we take no position on whether those rules apply.

## I. Background

¶ 9 In March 2010, regulation counsel was appointed to investigate allegations of misconduct by the former Maricopa County, Arizona, Attorney and two deputy county attorneys whom he supervised. The appointment was made by order of the Chief Justice of the Arizona Supreme Court, and was authorized by the Chief Justice of the Colorado Supreme Court.

¶ 10 In September 2010, Judicial Watch asked regulation counsel to release the following records for inspection:

[Request (1) ]: Records of communications between regulation counsel, the Arizona Supreme Court, and/or the Arizona State Bar concerning the appointment of regulation counsel by the Arizona Supreme Court chief justice to serve as independent bar counsel in the investigation;

[Request (2) ]: Records of communications between regulation counsel, the Colorado Supreme Court, and/or the Attorney Regulation Committee of the Supreme Court of Colorado concerning the appointment;

[Request (3) ]: Records concerning the authority of regulation counsel, under Colorado law, to accept the appointment;

[Request (4) ]: Records concerning the authority of regulation counsel, under Colorado law, to investigate or prosecute allegations of attorney misconduct for an entity other than the Supreme Court of Colorado;

[Request (5) ]: Records concerning the authority of regulation counsel, under Colorado law, to investigate or prosecute allegations of attorney misconduct against non-Colorado attorneys or attorneys who are not alleged to have engaged in misconduct in Colorado;

[Request (6) ]: Any and all bills, invoices, or statements for services rendered or expenses incurred by regulation counsel in serving as independent bar counsel for the investigation; and

[Request (7) ]: Any and all records of payments received by regulation counsel, the Colorado Supreme Court, or the State of Colorado for services rendered or expenses incurred by regulation counsel in serving as independent bar counsel.

¶ 11 Regulation counsel denied these requests. Then, under section 24–72–204(5) and (6)(a), C.R.S.2011, respectively, Judicial Watch and regulation counsel each filed court actions seeking relief. Judicial Watch asked the court to order regulation counsel to disclose the records, and regulation counsel asked the court to issue an order stating that Judicial Watch was not entitled to disclosure of the records it sought. The trial court consolidated the two cases.

¶ 12 In February 2011, as a result of its investigation, regulation counsel filed a formal complaint with the presiding disciplinary judge in Arizona against several Arizona attorneys.

¶ 13 In April 2011, the trial court ordered regulation counsel to allow Judicial Watch to inspect all the requested records in Requests (1), (2), (3), (4), (5), and (7), but denied its request to inspect some of the records described in Request (6), which consisted of detailed billing records. Regulation counsel appeals the part of the court's order requiring it to disclose records. Judicial Watch cross-appeals from the part of the order denying its request to inspect the detailed billing records described in Request (6).

## II. Analysis

### A. General Principles

¶ 14 The resolution of this case requires us to interpret statutes and court rules. These are questions of law, which we review de novo. See Argus Real Estate, Inc. v. E–470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo.2005) (statutes); Brown v. Silvern, 141 P.3d 871, 874 (Colo.App.2005)(rules of procedure).

¶ 15 When interpreting a statute, our primary responsibility is to give effect to the legislature's intent. We look first to the statute's plain language, reading it in the context of the statute as a whole and in the context of the complete statutory scheme. If the statute is clear and without ambiguity, we apply it as it is written. People v. Sexton, 2012 COA 26, ¶ 16, 296 P.3d 157, 2012 WL 503648.

¶ 16 The standard principles of statutory construction apply to the interpretation of court rules. Leaffer v. Zarlengo, 44 P.3d 1072, 1078 (Colo.2002).

### B. Regulation Counsel Is Part of the Judicial Branch

¶ 17 "The Colorado Supreme Court, as part of its inherent and plenary powers, has exclusive jurisdiction over attorneys and the authority to regulate, govern, and supervise the practice of law in Colorado to protect the public." Colo. Supreme Court Grievance Comm. v. Dist. Court, 850 P.2d 150, 152 (Colo.1993). The exercise of this jurisdiction is a "judicial function[ ] [that] fall[s] within the powers and duties of the judicial branch of the government made up of our constitutionally [and statutorily] created courts." Conway–Bogue Realty Inv. Co. v. Denver Bar Ass'n, 135 Colo. 398, 406, 312 P.2d 998, 1002 (1957).

¶ 18 The judiciary has "inherent and plenary powers," with or without any statutory enactments, "to regulate and control the practice of law to the extent that is reasonably necessary to the proper functioning of the judiciary." Id. at 407, 312 P.2d at 1002–03. Thus, all attorneys who are licensed to practice law are subject to "the disciplinary and disability jurisdiction of the [Colorado] Supreme Court in all matters relating to the practice of law." C.R.C.P. 251.1(b).

¶ 19 Regulation counsel's duties include "conducting investigations" of, and "[p]repar[ing] and prosecut[ing] disciplinary .... actions" against, attorneys who have allegedly violated the C.R.C.P. 251.1(a), (c), 251.3(c)(3), (4). Regulation counsel is appointed by, and serves at the pleasure of, the supreme court. C.R.C.P. 251.3(a).

¶ 20 In addition to the specifically enumerated regulatory duties, regulation counsel must "[p]erform such other duties as the Supreme Court may direct." C.R.C.P. 251.3(c)(12). Funding for regulation counsel comes from attorney registration fees as designated by the supreme court. C.R.C.P. 227(A)(1)(a), (c). Regulation counsel operates under a budget approved by the supreme court. C.R.C.P. 251.3(c)(1).

¶ 21 Regulation counsel is subject to the direction of the supreme court, and participates in the process of regulating attorneys. Thus, we conclude that regulation counsel is part of the judicial branch because it is part of a process that falls within the powers and duties of the judicial branch. See Colo. Supreme Court Grievance Comm., 850 P.2d at 152; Conway–Bogue Realty Inv. Co., 135 Colo. at 406–07, 312 P.2d at 1002–03.

¶ 22 By a parity of reasoning, this conclusion leads us to another. Because regulation counsel is part of the judicial branch, the records of regulation counsel are judicial records.

## C. CORA Does Not Require the Judiciary to Release the Records Requested by Judicial Watch

¶ 23 The legislature announced its intent in enacting CORA in section 24–72–201, C.R.S.2011: "It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 [CORA] or as otherwise specifically provided by law." The term "public records" is defined in section 24–72–202(6)(a)(I), C.R.S.2011. As pertinent here, it "means and includes all writings made, maintained, or kept by the state [or by] any agency ... of the state."

¶ 24 Our supreme court examined this language in *Office of State Court Administrator v. Background Information Services, Inc.,* 994 P.2d 420, 429 (Colo.1999). It concluded that this language did not "define the courts as an agency of the state for purposes of" CORA. *Id.* This holding was based, in part, on the history of a statute that is not part of CORA.

¶ 25 That statute, section 30–10–101(1)(a), C.R. S.2011, generally addresses the release of court records. It states that "no person, except parties in interest, or their attorneys, shall have the right to examine pleadings or other papers filed in any cause pending in [county and district] court[s]." The supreme court observed that it had previously interpreted this statute in *Times–Call Publishing Co. v. Wingfield,* 159 Colo. 172, 410 P.2d 511 (1966). It had concluded there that (1) judges and court clerks were not "prohibited from allowing persons other than parties in interest or their attorneys to examine the pleadings or other papers on file" in county and district courts, *id.* at 177, 410 P.2d at 513; and (2) in a matter of public interest, such as an election contest, a court would abuse its discretion to deny a newspaper's request for access to the court file, *id.* at 177–78, 410 P.2d at 514.

¶ 26 CORA was first enacted in 1968. Ch. 66, secs. 1–9, § 113–2–1, 1968 Colo. Sess. Laws 201–04. As the supreme court noted in *Office of State Court Administrator,* 994 P.2d at 428–29, the legislature was aware of section 30–10–101(1)(a) and *Times–Call Publishing Co.* when it passed CORA. In fact, both the statute and the decision were mentioned in a legislative report. The report recognized the supreme court's concern that parties in cases might be damaged if "curious" members of the public had "indiscriminate" access to those records for no "legitimate" reason. *Id.* at 428.

¶ 27 Indeed, "[i]n the face of that report, the General Assembly neither repealed the pertinent language in section 30–10–101, nor did it define the courts [in the original version of CORA] as an agency of the state" for the purposes of CORA. *Id.* at 429. We note that, in the twelve and one-half years since *Office of State Court Administrator* was decided, the legislature has not amended section 24–72–202(6) of CORA to define the courts as a state agency for CORA's purposes.

¶ 28 The legislature has, however, amended or added other subsections in that statute on numerous occasions. *See* Ch. 117, sec. 6, § 24–72–202(6)(a)(I), 2000 Colo. Sess. Laws 415; Ch. 70, sec. 4, § 24–72–202(6)(b)(III), 2000 Colo. Sess. Laws 223; Ch. 75, sec. 8, § 24–72–202(6)(b)(IV), 2000 Colo. Sess. Laws 243; Ch. 357, sec. 4, § 24–72–202(6)(b)(V), 2000 Colo. Sess. Laws 1736; Ch. 286, sec. 4, § 24–72–202(8), 2001 Colo. Sess. Laws 1075; Ch. 187, sec. 2, § 24–72–202(3), 2002 Colo. Sess. Laws 643; Ch. 138, sec. 3, § 24–72–202(5), 2002 Colo. Sess. Laws 402; Ch. 179, sec. 33, § 24–72–202(6)(b)(III), 2004 Colo. Sess. Laws 558; Ch. 151, sec. 2–3, § 24–72–202(1.6), (1.8), (1.9), (2), (6)(a)(IV), (6)(b)(VI)-(IX), 2005 Colo. Sess. Laws 530–32; Ch. 308, sec. 43, § 24–72–202(1.7)–(1.9), 2006 Colo. Sess. Laws 1503; Ch. 344, sec. 2, § 24–72–202(6)(b)(X)–(XII), 2006 Colo. Sess. Laws 1719; Ch. 231, sec. 16, § 24–72–202(6)(b)(X)–(XII), 2007 Colo. Sess. Laws 917; Ch. 358, sec. 3, § 24–72–202(6)(a)(II)(C) & (6.5)(b), 2009 Colo. Sess. Laws 1864; Ch. 355, sec. 13, § 24–72–202(6)(b)(XI)–(XIII), 2010 Colo. Sess. Laws 1687–88; Ch. 128, sec. 18, § 24–

72–202(6)(X), 2011 Colo. Sess. Laws 435; Ch. 266, sec. 18, § 24–72–202(6)(b) (XIII), 2011 Colo. Sess. Laws 1211.

¶ 29 And we know that the legislature, when it has deemed such action to be necessary, has previously amended CORA to modify a judicial interpretation of section 27–27–202(6)(a). *See Denver Post Corp. v. Stapleton Development Corp.*, 19 P.3d 36, 39 (Colo.App.2000)(legislature enacted section 24–72–202(6)(a)(1.5), C.R.S.2011, in response to *Uberoi v. University of Colorado*, 686 P.2d 785, 788–89 (Colo.1984), in which the supreme court narrowly construed CORA to exclude the University of Colorado from CORA's coverage); *see also Colorado Civil Rights Comm'n v. Regents of University of Colorado*, 759 P.2d 726, 734 (Colo.1988) (legislative amendment "redefining a term" previously construed by a court shows that the court's construction did not jibe with the legislature's intent).

¶ 30 The parties have not pointed us to any statute or legislative statement that indicates the legislature objected to the supreme court's analysis in *Office of State Court Administrator* as being contrary to its intent, and our independent research has not disclosed any such statute or statement. Thus, we presume that the legislature has "accepted and ratified the prior judicial construction." *People v. Swain*, 959 P.2d 426, 430–31 (Colo.1998); *Tompkins v. DeLeon*, 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with [the] judicial construction of the statute.").

¶ 31 We further conclude that, because *Office of State Court Administrator* held that the judiciary is not a "state agency" as that term is used in the definition of "public records" in section 24–72–202(6)(a)(I), the judiciary is also not part of the "state" as that term is used in *that statute*. We provide three reasons in support of this conclusion.

¶ 32 First, Judicial Watch has not suggested that there is a difference between the "state" and a "state agency" for purposes of analyzing its request.

¶ 33 Second, nothing in the supreme court's opinion in *Office of State Court Administrator* suggests that there would be a different outcome if the court had evaluated whether the requested information was a record of the "state," as opposed to a record of a "state agency."

¶ 34 Third, the supreme court's holding in *Office of State Court Administrator* is broad.

Specifically, we conclude that the General Assembly has enacted various specific statutes that control the release of court record information and has afforded the courts themselves control over the release of the remaining information, pursuant to court order or rule.

*Id.* at 422. Thus, because CORA does not contain any specific section "control[ling] the release" of the information requested here, it does not apply.

¶ 35 Based on this analysis, we conclude that CORA does not include the judiciary within the terms "state" and "state agency." Accordingly, because regulation counsel is part of the judicial branch, it likewise is not part of the state or a state agency for the purposes of CORA. We conclude that the trial court erred when it concluded that CORA governed Judicial Watch's request for regulation counsel's records and that those records must be disclosed under CORA.

### D. We Take No Position on Whether Court Rules Govern Judicial Watch's Request

¶ 36 After reaching the conclusion that the judiciary was not an agency of the state for purposes of CORA in *Office of State Court Administrator*, the supreme court made three observations.

¶ 37 First,

access to court-maintained files involves a fragile balance between the interests of the public and the protection of individuals who are parties to cases in court. Court files can contain very private emotional, financial, and psychological documents, as well as identifying information … of many of the people who are party or witness to a civil or criminal case.

*Office of State Court Administrator*, 994 P.2d at 429.

¶ 38 Second, when the legislature wishes to resolve questions concerning that balance, "its specific intent clearly governs." *Id.* One example of the expression of such specific intent is the Criminal Justice Records Act, sections 24–72–301 to –309, C.R.S.2011, which addresses the release, and limitations on the release, of records in criminal cases, including criminal justice records held by the courts. *Office of State Court Administrator*, 994 P.2d at 429.

¶ 39 Third, if the legislature has not expressed its specific intent concerning a question involving that balance, "court rules and procedures govern, and it rests with the court either on a generalized or a specific basis to balance the competing interests." *Id.*

¶ 40 Judicial Watch unequivocally limits the basis for its request to CORA. It rejects any alternative argument, based on the supreme court's third observation in *Office of State Court Administrator*, that its request is governed by court rules. In doing so, it contends that court rules, such as C.R.C.P. 251.1 to 251.34 (the Colorado Rules of Procedure Regarding Attorney Discipline and Disability Proceedings), C.R.C.P. Chapter 38, Rule 1 (Public Access to Records and Information), and Chief Justice Directive 05–01 (a "comprehensive framework for public access to court records," CJD 05–01, sec. 1.00(a)) do not apply.

¶ 41 Therefore, we take no position on whether Judicial Watch would be entitled to the records it seeks under these court rules or the Chief Justice's Directive because it has expressly waived that argument. *See Denver & Rio Grande R.R. Co. v. Brennaman*, 45 Colo. 264, 100 P. 414, 415 (1909) (when appellant "expressly waived [a] question and withdrew it from the consideration of this court" it was no longer before the court); *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 (Colo.App.2011) (when a party does not raise issue in the trial court, it is waived, and court of appeals will not consider it).

¶ 42 As a result of this analysis, we conclude that (1) the trial court erred when it concluded that Judicial Watch was entitled, under CORA, to inspect the records described in Requests (1), (2), (3), (4), (5) and (7), and to inspect some of the records described in Request (6); and (2) the trial court correctly, although for different reasons, *see Negron v. Golder*, 111 P.3d 538, 542 (Colo. App.2004)(court of appeals may affirm on grounds different from those relied upon by trial court), denied Judicial Watch's request to inspect some of the records described in Request (6).

### E. Attorney Fees

¶ 43 Judicial Watch requests attorney fees pursuant to C.A.R. 39.5 and section 24–72–204(5), C.R.S.2011. Because we hold that Judicial Watch is not entitled to inspect the records under CORA, section 24–72–204(5) does not provide a basis for an award of attorney fees to Judicial Watch. Likewise, C.A.R. 39.5 does not provide a basis for an award of appellate attorney fees because such attorney fees are not "otherwise recoverable."

¶ 44 The judgment is reversed as to the granting of Judicial Watch's request to inspect the records described in Requests (1), (2), (3), (4), (5), and (7), and some of the records described in Request (6). It is affirmed as to the denial of the request to inspect some of the records described in Request (6). The case is remanded to the trial court to enter an order denying Judicial Watch's entire request.

Judge LOEB and Judge LICHTENSTEIN concur.