COLORADO COURT OF APPEALS                                    2017COA132

Court of Appeals No. 16CA1542
Arapahoe County District Court No. 14MH13
Honorable Theresa M. Slade, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of T.T.,

Respondent-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FOX
Richman, J., concurs
Bernard, J., dissents

Announced October 19, 2017

Ronald A. Carl, County Attorney, Virginia Byrnes Horton, Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Combs & Recht, LLC, James C. Recht, Castle Rock, Colorado, for Respondent-
Appellant

¶ 1    After respondent, T.T., was released from involuntary mental health treatment pursuant to section 27-65-110, C.R.S. 2017, he unsuccessfully attempted to have his name removed from the district court's index of cases, invoking section 27-65-107(7), C.R.S. 2017.  T.T. appeals the district court's order denying his motion to omit his name from the district court's index of cases.  We reverse the district court's order and remand with directions.

## I.    Background

### A.    Involuntary Treatment and First Order Denying T.T.'s Motion

¶ 2    According to T.T.'s then treating physician, T.T. suffered from "severe symptoms . . . that lead to [the] development of [a] grave disability."  Although T.T. had accepted voluntary treatment, the physician believed that T.T. would "not remain in a voluntary program," so he filed a certification for the short-term treatment of T.T. pursuant to section 27-65-107.  The district court then issued a notice of certification for short-term treatment and appointed counsel to represent T.T.  Six days later, the physician filed a notice of termination of involuntary treatment in accordance with section 27-65-110, noting that T.T. "has had significant improvement" and "is no longer gravely disabled."

1

¶ 3    About two years after he was released from involuntary treatment, T.T. went to the district court and learned that his name still appeared on the court's index of cases. He asked the clerk to remove his name from the index, but the clerk refused. About two months later, T.T. filed a pro se motion with the district court requesting that his name be omitted from the court's index in accordance with section 27-65-107(7). The district court denied T.T.'s motion without making any factual findings or legal conclusions, and T.T. appealed.

B.    Limited Remand and Second Order Denying T.T.'s Motion

¶ 4    A division of this court issued an order remanding the case for the district court to hold a hearing on the matter and to make findings of fact and conclusions of law.

¶ 5    At the hearing, in describing "the life of a mental health case" in general, the district court judge discussed applicable law and a "Best Practices policy for mental health cases." The judge also discussed conversations she initiated with her staff and the clerk's office staff about record-keeping procedures for mental health cases. The judge stated that, according to an unidentified staff member, there is a "computer name index" (the Eclipse system)

2

used for case materials; mental health records are included but are kept separately in a secure location accessible only by court order, and they remain "indexed only for the purposes of maintaining order to the file[.]" According to the staff member, the judge stated that it may be possible to electronically search for a name in the Eclipse system and discover that a related mental health case exists, but "it would be clear that the case was sealed" and that the person searching was "not permitted to view it." The judge further explained that the staff member claimed that she could not delete a name from the Eclipse system even if ordered to do so. After generally discussing mental health record-keeping procedures, the district court judge discussed the procedures that were supposedly followed in the underlying case.

¶ 6 T.T. objected and moved to strike the court's references to what it learned "from other clerks" because T.T. had no opportunity to confront those people. The district court judge denied the motion, explaining that, as the then presiding judge over the mental health division, she was concerned that T.T. may allege that proper procedures were not followed and that she "needed to — and arguably as the presiding judge should already know, the

3

procedures and whether we're following them." The judge explained that she did not speak with staff about this particular case, but rather about record-keeping procedures generally.

¶ 7    T.T.'s attorney later attempted to admit two exhibits into evidence. The first exhibit consisted of excerpts from *Office of State Court Administrator v. Background Info. Servs., Inc.*, 994 P.2d 420, 423 (Colo. 1999). The second exhibit was a series of stipulated facts, initially filed before the hearing, admitting that (1) T.T.'s then treating physician filed a notice of certification and certification of short-term treatment pursuant to section 27-65-107; (2) the physician later filed a notice of termination of involuntary treatment pursuant to section 27-65-110; and (3) T.T.'s name "has never been omitted from the index of cases of the court under [section] 27-65-107(7)." The stipulation further provided that T.T. would not object if opposing counsel makes an offer of proof that "since the enactment of [section] 27-65-107(7), the Arapahoe County District Court has never omitted the name of any respondent from the index of cases of the court." Concerning the first exhibit, the district court noted that it was "more of an argument" and that the cases the exhibit referenced were previously cited in filings in the

underlying case. The court explained that, while it would consider the cases in making its final determination, it would not admit the case into evidence. Regarding the second exhibit, the district court explained that the stipulation was a "pleading" previously filed in, and considered by, the court, and it did not need to be admitted into the court file as an evidentiary exhibit.

¶ 8 T.T.'s attorney also requested that T.T. be allowed to testify, but the district court declined the request, explaining that T.T.'s expected testimony was not relevant to the central issue of what "index of cases" meant as used in section 27-65-107(7).

¶ 9 On May 30, 2017, the district court granted in part T.T.'s motion to omit his name from the index, directing the Arapahoe County Clerk to omit T.T.'s name from "any list generated or produced, even for the purposes of storage." The court also denied the motion in part, stating that T.T.'s name shall "remain in the [Eclipse] database for the purposes of the Clerk of Court's maintenance of records and to comply with Section 27-65-107(7)."

## II. Name Omission Requirement

¶ 10 T.T. argues that the district court erred in denying his motion because, based on the pertinent statutes' plain language and the

5

stipulated facts, the court clerk should have omitted T.T.'s name from the Eclipse system when T.T. was released from treatment. T.T. further asserts that refusing to omit his name from the Eclipse system is contrary to the legislature's express intent to provide the fullest possible measure of privacy to people receiving treatment for a mental health disorder. We agree.

### A. Preservation and Standard of Review

¶ 11   The parties agree that this issue has been properly preserved.

¶ 12   Statutory interpretation is a question of law that we review de novo. *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 2012 COA 160M, ¶ 9. "We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition." *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo. 2004). We consider the statute as a whole, interpreting it in a manner giving "consistent, harmonious, and sensible effect to all its parts," and we "should not interpret the statute so as to render any part of it either meaningless or absurd." *Lujan v. Life Care Ctrs. of Am.*, 222 P.3d 970, 973 (Colo. App. 2009).

¶ 13    In construing legislation, we look first to the plain language of the statute; then, if the language is ambiguous, we "construe the statute in light of the General Assembly's objective." *Anderson v. Vail Corp.*, 251 P.3d 1125, 1127-28 (Colo. App. 2010). "A statute is ambiguous only if it is fairly susceptible of more than one interpretation." *Kyle W. Larson Enters., Inc.*, ¶ 11. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *People v. Nance*, 221 P.3d 428, 430 (Colo. App. 2009) (citation omitted).

### B.    Applicable Law

#### 1.    Public Records

¶ 14    "[T]he courts of this country recognize a general right to inspect and copy public records." *Pierce v. St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d 600, 605 (Colo. 1999) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). The public policy of Colorado similarly favors making official records accessible to the public. *See* § 24-72-201, C.R.S. 2017; *see also* Chief Justice Directive 05-01, Public Access to Court Records, § 1.00(a)(1) (amended Oct. 18, 2016) (CJD 05-01). This right, however, is not

7

absolute. *See Nixon,* 435 U.S. at 598; *see also* CJD 05-01 § 4.60(b) (noting the types of case records, including indices in mental health cases, that are not accessible to the public). Public access to official records is meant to advance "citizens' right to be informed about 'what their government is up to,'" not merely to disclose "information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press,* 489 U.S. 749, 773 (1989) (citation omitted).

¶ 15    Specifically regarding judicial records, the Colorado legislature did not intend court records to be open to public inspection for all purposes under the Public Records Act. *Background Info. Servs., Inc.,* 994 P.2d at 426. When the legislature chooses to address and resolve the balance between the public's interest in accessing records and a private individual's interest in privacy, "its specific intent clearly governs," as evidenced in statutes such as section 27-65-107. *Id.* at 429.

2.    Court Indices and Mental Health Cases

¶ 16    Section 27-65-107(7) states the following:

Records and papers in proceedings under this section and section 27-65-108 shall be maintained separately by the clerks of the several courts. Upon the release of any respondent in accordance with the provisions of section 27-65-110, the facility shall notify the clerk of the court within five days of the release, and the clerk shall forthwith seal the record in the case and omit the name of the respondent from the index of cases in such court until and unless the respondent becomes subject to an order of long-term care and treatment pursuant to section 27-65-109 or until and unless the court orders them opened for good cause shown. In the event a petition is filed pursuant to section 27-65-109, such certification record may be opened and become a part of the record in the long-term care and treatment case and the name of the respondent indexed.

¶ 17    The legislative declaration found in section 27-65-101(1)(c), C.R.S. 2017, states that one of "the purposes of this article [is] . . . [t]o provide the fullest possible measure of privacy, dignity, and other rights to persons undergoing care and treatment for a mental health disorder." This section also provides that, in order to "carry out these purposes, . . . the provisions of this article shall be liberally construed." § 27-65-101(2).

¶ 18    Although no Colorado statute defines the term "index of cases," section 13-1-101, C.R.S. 2017, requires clerks of Colorado's

9

"courts of record" — including district courts — to "keep in their respective offices suitable books for indexing the records of their said offices, one to be known as the direct index and one as the inverse index." Section 13-1-102, C.R.S. 2017, further provides that, "[i]n said indexes, the clerks shall properly enter the title of each cause . . . and the case number references to the various [filings] and other proceedings of the court in such cause."

¶ 19    While the Colorado Supreme Court has detailed various historical uses of electronic databases for storing case records, *see Background Info. Servs., Inc.*, 994 P.2d at 423, neither party cites to, and we are unaware of, any Colorado precedent explaining how clerks are to keep an "index of cases" in any given court, including computerized indices.

## C.    Analysis

¶ 20    As a preliminary matter, court records for mental health cases, including indices, are not open to public access. *See id.* at 429; *see also* CJD 05-01 §§ 3.03(a)(3), 4.60(b)(5). Although the district court did not conclude whether and to what extent T.T. was able to access his case file at the district court clerk's office, the alleged public disclosure by the district court clerk of T.T.'s case records

10

was clearly prohibited. *See* § 27-65-121(1), C.R.S. 2017 (Subject to limited exceptions, "all information obtained and records prepared in the course of providing any services pursuant to this article 65 . . . are confidential and privileged matter."); *see also* CJD 05-01 §§ 3.03(a)(3), 4.60(b)(5).

¶ 21    The plain language of section 27-65-107(7) requires that, subject to exceptions not applicable here, "the clerk shall . . . omit the name of the respondent from the index of cases in such court" after the clerk is notified of the respondent's release from involuntary treatment pursuant to section 27-65-110. *See Yascavage*, 101 P.3d at 1093. One of the definitions of "index" provided by Merriam-Webster is "a list (as of bibliographical information or citations to a body of literature) arranged usually in alphabetical order of some specified datum (such as author, subject, or keyword)." Merriam-Webster Dictionary, https://perma.cc/H9NZ-QV5R. In section 27-65-107(7), the term "index" refers to a single "index of cases," is not used again in the statute, and is not defined by this or any other Colorado statute.[1]

---

[1] Montana's parallel statutory provision also does not define or explain the term "index." *See* Mont. Code Ann. § 53-21-103 (2017)

11

*See Anderson*, 251 P.3d at 1127-28; *Nance*, 221 P.3d at 430. Because of the language's statutory context and the various paper and electronic methods available to district court clerks to keep records of case names and numbers, as mentioned by the parties and the district court, we determine that the phrase "omit the name of the respondent from the index of cases in such court" is ambiguous. *See Kyle W. Larson Enters., Inc.*, ¶ 11.

¶ 22 We therefore construe the language at issue liberally and in light of the General Assembly's objective: to "provide the fullest possible measure of privacy, dignity, and other rights to persons undergoing care and treatment for a mental health disorder." § 27-65-101(1)(c); § 27-65-101(2) ("[T]he provisions of this article shall be liberally construed."); *see also Anderson*, 251 P.3d at 1127-28.

¶ 23 The record indicates that the district court clerk records case names and numbers in the Eclipse system, and the Eclipse system is then used to generate other lists of case names and numbers —

---

(requiring the clerk to "seal the record in the case and omit" the affected person's name "from the index or indexes of cases"); *see also T.L.S. v. Mont. Advocacy Program*, 144 P.3d 818, 823 (Mont. 2006) (interpreting section 53-21-103 to allow the disclosure of certain redacted sealed documents).

such as lists of open cases, closed cases, and mental health and juvenile cases (to later find the separately kept records and materials).  The record contains no evidence of a paper list or volume or an electronic record apart from the Eclipse system kept by the district court clerk to index all cases in that court in compliance with sections 13-1-101 and -102.  Moreover, the People specifically stipulated that T.T.'s name was not "omitted from the index of cases of the court under [section] 27-65-107(7)."  We therefore conclude that, on the facts of this case, the term "*the index of cases*" in section 27-65-107(7) (emphasis added) refers to the Eclipse system, not merely the various sub-indices generated from the Eclipse system's data.  To conclude otherwise would render the statute's reference to a single index meaningless and would fail to fulfill the statute's stated purpose of maximizing the privacy of the mental health treatment recipients referenced in the statute.  *See Lujan*, 222 P.3d at 973; *see also* § 27-65-101(1)(c).

¶ 24     While the General Assembly obligates court clerks to keep records and index cases, *see* §§ 13-1-101, -102, identifying information (including names) is often omitted from court records and case names as required in the interest of privacy; for example,

13

the full names of victims of sexual assault and children are omitted in various contexts and replaced with initials or some other reference excluding identifiable information. *See, e.g.*, *In re People in Interest of A.A.*, 2013 CO 65, ¶ 3 (referring to a juvenile defendant accused of sexual assault on a child by the defendant's initials and referring to the victim as "one of [the defendant's] neighbors"); *People in Interest of C.S.*, 2017 COA 96, ¶¶ 1-3 (referring to the child involved in a dependency and neglect proceeding by the child's initials or as "child" only).

¶ 25    Consequently, we disagree with the People's contentions that omitting T.T.'s name from the Eclipse system would cause the court record of the case to be "obliterated" and would make it impossible for the clerk to re-index T.T.'s name as required by statute should T.T. become subject to an order of long-term care pursuant to section 27-65-109, C.R.S. 2017, or should the court order T.T.'s case records opened for good cause. *See* § 27-65-107(7). Based on the regular, orderly handling of cases in other contexts where party names are omitted from case names, there is no reasonable basis to conclude that omitting T.T.'s name from the Eclipse system by using his initials or another similar method would destroy the

entire case record or prevent the district court clerk from re-indexing T.T.'s full name should the need arise.

¶ 26 Accordingly, we reverse the district court's May 30, 2017, order and remand for the district court to order that T.T.'s name be omitted from the Eclipse system and lists generated from the Eclipse system's data by use of T.T.'s initials or any other method omitting identifying information that the district court chooses to employ in accordance with this opinion.

¶ 27 Because we reverse the challenged order on these grounds, we need not address T.T.'s other arguments for reversal. *See In re Marriage of Krejci*, 2013 COA 6, ¶ 10 (declining to address a party's remaining claims of error where one was sufficient to reverse the trial court's ruling).[2]

---

[2] The district court was understandably proactive in learning about the filing systems at issue. However, an evidentiary hearing with counsel for any relevant witnesses would have created a more useful record for this court to review, allowing the trial court to remain as an impartial decision-maker. *See* Colo. Attorney Gen.'s Office, *State Services*, https://perma.cc/CF4Y-3QCU ("The Public Officials Unit [of the Colorado Attorney General's Office] represents the statewide elected officials as well as the Judicial Department . . . [and] primarily handles litigation and appeals[.]"); *Barber v. Ritter*, 196 P.3d 238, 241 (Colo. 2008) (deciding a case where attorneys in the Public Officials Unit represented the Colorado Governor and State Treasurer); *Coffman v. Colo. Common Cause*,

## III.   Conclusion

The district court's order is reversed, and the case is remanded with directions to omit T.T.'s name from the Eclipse system and lists generated from the Eclipse system's data by use of T.T.'s initials or any other method omitting identifying information that the district court chooses to employ consistent with this opinion.

JUDGE RICHMAN concurs.

JUDGE BERNARD dissents.

---

102 P.3d 999, 1000 (Colo. 2004) (deciding a case where attorneys in the Public Officials Unit represented the Colorado State Treasurer); *see also Knop v. Johnson,* 977 F.2d 996, 1011 (6th Cir. 1992) ("[I]t is 'impermissible for a trial judge to deliberately set about gathering facts outside the record.'") (citation omitted); *City of Manassa v. Ruff,* 235 P.3d 1051, 1056 (Colo. 2010) ("The due process requirement of neutrality in adjudicative proceedings entitles a person to an impartial and disinterested decision-maker.").

JUDGE BERNARD, dissenting.

¶ 29    T.T. might have a point.  Section 27-65-107(7), C.R.S. 2017, promised him that, after he had been released from short-term treatment, the court's clerk would "forthwith seal the record in the case and omit [his] name . . . from the index of cases in such court." But that promise was apparently broken because a court clerk apparently gave him access to his file, which should have been sealed.

¶ 30    I purposefully used the word "apparently" twice in the previous sentence because, after reviewing the record, I am left with more questions than answers.  What is an index of cases?  Is the Eclipse computer system such an index?  If so, what does the phrase "omit [his] name" from such an index mean?  What does it take, in the Information Age, to satisfy the statutory requirement that a clerk omit someone's name from the computerized index?  If Eclipse is not an index of cases, what is it?  Can we tell that, in T.T.'s case, the clerk did not omit his name from the index?  And why did a court employee give T.T. access to his file?

¶ 31    I hope that I can answer some of these questions — I cannot answer all of them — and I will try to do so below.  But the answers

17

that I can find, when combined with the mysteries that remain, convince me that I must respectfully dissent from the majority's decisions (1) to reverse the trial court's order; and (2) to remand the case with directions that the trial court "omit T.T.'s name from the Eclipse system and lists generated from the Eclipse system's data by use of T.T.'s initials or any other method omitting identifying information that the [trial] court chooses to employ consistent with this opinion." *Supra* ¶ 26.

¶ 32     I begin my analysis by addressing the question of what an index of cases is.

¶ 33     Section 13-1-101, C.R.S. 2017, requires clerks of court to keep "suitable books for indexing the records of their said offices, one to be known as the direct index and one as the inverse index." Section 13-1-102, C.R.S. 2017, describes the information that clerks must include in them, including "the title of each cause . . . and the case number references to the various orders, rulings, judgments, papers, and other proceedings of the court in such cause or matter." These two statutes have a lot of dust on them because they were enacted in 1889, and appellate courts have not cited them much since.

¶ 34    But section 13-1-119, C.R.S. 2017, which has been around since 1887, was amended in a way that has helped me decide what sections 13-1-101 and -102 mean. Section 13-1-119 states today that "[t]he judgment record and register of actions shall be open at all times during office hours for the inspection of the public without charge," and the court clerk is required "to arrange the several *records* kept by him in such manner as to facilitate their inspection." (Emphasis added.) But this section assumed its present form when it was amended in 1979. It previously read that "[t]he judgment docket shall be open at all times during office hours for the inspection of the public without charge," and the court clerk was required "to arrange the several *dockets and books of record . . . in such manner as to facilitate their inspection.*" Ch. 125, sec. 3, § 13-1-119, 1979 Colo. Sess. Laws 596 (emphasis added).

¶ 35    I submit that the reference to "books of record" in the original version of section 13-1-119 was to the "books" described in section 13-1-101. And the purpose of these books — which consisted of the direct index and the inverse index — was, as the original version of section 13-1-119 pointed out, to facilitate the public's inspection.

19

¶ 36     This supposition is supported by *Office of State Court Administrator v. Background Info. Servs., Inc.*, 994 P.2d 420 (Colo. 1999). In that case, the supreme court stated that the General Assembly has made a "general pronouncement[]" that "courts of record shall maintain a registry of actions and a judgment record, and shall provide that they be open to the public for inspection." *Id.* at 428. In support of this statement, the court cited sections 13-1-101, -102, and -119.

¶ 37     I would therefore conclude that the index of cases mentioned in section 27-65-107(7) consists of the direct index and the inverse index described in section 13-1-101. So, when section 27-65-107(7) required the clerk to omit T.T.'s name from the index of cases, it meant that his name should be removed from an index of cases that was *open for public inspection.*

¶ 38     Indeed, reading sections 13-1-101, -102, and -119 together with *Background Info. Servs.*, it is clear to me that such books or paper indices were designed to be open for public inspection. (This is not a unique concept. One useful analog is the grantee-grantor indices, kept by the county clerk and recorder, that the public uses

20

when it researches real estate transactions. *See* § 30-10-408, C.R.S. 2017.)

¶ 39    Next, what does omitting a name from an index of cases mean when the name consists of electrons in a computer system instead of ink or type on a page?  The record in this case does not convince me that the Eclipse system qualifies as an index of cases under section 13-1-101 and section 27-65-107(7).  It *could* be an index of cases.  Section 13-1-102 now states that an index may refer to "computer record[s]."  And section 13-1-119 states that such records may "be presented on . . . computer terminal[s]."

¶ 40    But, as I concluded in the previous paragraph, this would mean that the Eclipse system, at least in part, facilitates the public's inspection of certain information.  And the record does not tell us whether, in addition to court employees, the public has access to the Eclipse system.  I would doubt that the public has access because the record indicates that the system also contains *confidential information. See, e.g.*, § 13-1-119.5(2), C.R.S. 2017 ("The supreme court may adopt rules regarding access to the name index and register of actions, including rules identifying confidential information maintained in the system and state requirements for

using the confidential information."). It is the presence of this confidential information on the system that leads to my surmise that the Eclipse system is not an index of cases and that the public should not be able to access it to look at confidential information.

¶ 41 There are rules governing access to confidential information. According to section 4.60 of Chief Justice Directive 05-01, Public Access to Court Records (amended Oct. 18, 2016), the public cannot obtain access to mental health cases. According to section 3.07 of Chief Justice Directive 05-01, section 3.07, once the clerk sealed T.T.'s case under section 27-65-107(7), it should have only been accessible to "judges, court staff, and other authorized . . . staff," unless a court issued an order granting a person access to it. Section 3.07 adds that "[j]udges and court staff should respond to requests for a statutorily-sealed court record by stating that no such court record exists." According to the record, although sealed cases remain in the database, there is a clear designation on the computer screen that those cases are sealed, which means that *a court employee*, let alone a member of the public, cannot view them.

¶ 42 So it would seem that T.T.'s request of a court employee about his case should have been met with the statement that "no such

court record exists." It was not — indeed, it seems that he obtained access to a file that should have been sealed — and, as I have recognized above, that means T.T. may have a point about the court not following section 27-65-107(7).

¶ 43    But, based on what little we know, even if I were to assume that the Eclipse system is or contains an "index of cases" for the purposes of section 27-65-107(7), that index is already appropriately cloaked to ensure that the public cannot gain access to T.T.'s case or to the fact that his case was filed. So I would conclude that T.T.'s name does not have to be removed from confidential information in a database that is supposed to be available only to judges and court staff, not to the public.

¶ 44    The record, although unclear, strongly suggests that the Eclipse system was not the source of T.T.'s complaint. Rather, the employee who provided him the confidential information apparently was the source. (I again use the word "apparently" because the record does not tell me much about how T.T. received the file. Did he ask to see it before or after the court had sealed it? Did the employee let him look at it because it was the file in *his* case? Did he ask to see the index of cases?) I must therefore respectfully

disagree with the majority's decision to remand the case to the trial court so that it can alter the data in the Eclipse system because that remedy does not seem to address the reason why T.T. appears to have a complaint.

¶ 45   And the remand may be an empty act.  The trial court quoted a court employee as saying that court employees could not "delete names [or] . . . [case] numbers" because they were "physically unable to do it."  (I interpret the words "physically unable" to mean that the computer system would not let court employees delete such information.  The record suggests that such authority rests with the Office of the State Court Administrator.)

¶ 46   I recognize the importance of T.T.'s privacy interest in having his record sealed and in omitting his name from any publicly accessible databases.  But I do not think that eliminating information from a confidential database would serve that interest. In other words, I respectfully submit that, although the remedy that the majority has chosen may have been spot on in an era of books and paper records, it is not well suited to our computerized world.

24